The Honorable Judges of the United States Court of Appeals in and before the Seventh Judicial Circuit, hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for argument today is Page v. Alliant Credit Union. Mr. Wessler. Good morning, Your Honor. May it please the Court, Matthew Wessler for Alicia Page. With the Court's permission, I'd like to reserve three minutes for rebuttal. Please proceed. Thank you. You have to keep track of your own time. I will. There have been more than a dozen federal courts that have considered whether a contract like Alliance here, which doesn't ever use the phrase available balance, let alone define it, can nonetheless be said to unambiguously authorize the assessment of overdraft fees based on not just settled transactions but also deposit holds and pending debit transactions. Outside of the District Court's decision in this case, all of these courts have held that a breach of contract claim like the one here cannot be dismissed at the pleading stage because these contracts are at a minimum ambiguous. Mr. Wessler, I wonder why this case is in federal court. It appears to be litigated under Illinois law. And if the Illinois fraud statutes on which you're relying are to have any bearing, they would have bearing on transactions in Illinois by Illinois residents. And that raises the question whether the part of the Class Action Fairness Act, which says that a district court must abstain when more than two-thirds of the class members are in the same state, applies to this case. No one has talked about the statutory criteria for federal adjudication, but I would welcome your views on that question. It's correct, Your Honor, that there was no briefing about this issue and the District Court didn't address it. I think alliance practices, although the issue in this case does arise under Illinois law, are broader than just Illinois and the contract principles that would apply to alliance contracts. But Illinois law applies only in Illinois. It doesn't apply in New Jersey, right? So the question I'm asking is how can more than two-thirds of a class of people suing under Illinois law not be citizens of Illinois? Well, I think, Your Honor, that this contract, even though it's governed by Illinois law, may nevertheless apply that law to the interpretation of this contract, regardless of where a customer may be. I'll also note that there was a federal claim in this case. It looks to me like a potential federal defense, and it's pretty well established that federal defenses don't create federal jurisdiction. Understood, Your Honor. I gather you obviously didn't discuss it in your appellate brief, and you just said it wasn't discussed in the District Court. I think we need a discussion of this before we can proceed, because 1332d.4 says that a district court must refrain from exercising jurisdiction under the defined circumstances. And, well, must is a compulsory word. You get the problem. And I'd be happy to file supplemental briefing after the argument, Your Honor, on exactly that issue. So I think we will be directing this request to both parties. Absolutely. If I could return to the core issue in this case, the problem with Alliance contract here is that it never used the term available balance anywhere in its contract, and yet it insists that it is able to assess overdraft fees based on that method of accounting. Well, you know, good morning. Even if we don't consider Section 8B, doesn't Section 7A give notice that available funds are the focus? That's correct, Your Honor. A couple of responses to that. The first is that what you just quoted never used the term available balance anywhere in the contract. Available balance is a specific defined term of art in the industry. Although it doesn't actually carry a universal definition, it can mean several different things. But regardless of what potential definition available balance might have, the language you quoted in 7A doesn't actually use that term. The one provision that does govern overdraft liability, which is what we're talking about here, is Section 8A. And in Section 8A, the contract uses the phrase account balance, not available balance, not available funds, but account balance, which also has a defined meaning in the industry, which is exactly what Ms. Page asserts should have happened here, which is that overdraft charges could only be assessed for settled transactions. Now, Alliant doesn't dispute that definition. It agrees that account balance carries that precise meaning, and that's the phrase that's used in the specific provision that governs overdraft liability. Now, even if you thought, Judge Rovner, that 7A had some bearing on this question, it doesn't address overdraft liability. It addresses a different topic, which is withdrawal restrictions. That would still leave a fundamental ambiguity in this contract. If you thought the section on withdrawal restrictions meant available balance, even though that wasn't what it used, you would have that definition potentially purporting to apply in 7A, but you would have account balance as the definition purporting to apply in 8A. But don't we have to read the contract as a whole and read those together rather than separately like you're suggesting? Certainly, the basic principle I agree with, Judge St. Eve, but those two provisions are not linked in any explicit way. And, in fact, they address different policy concerns. So, for instance, a bank imposes a specific set of conditions on when a customer may or may not withdraw money. That's what 7A undertakes to explain. But regardless of whether it can deny a customer the right to withdraw certain funds, there is a separate question about whether, notwithstanding that, it may also assess fees. They speak to different aspects of a customer's relationship with the bank. And if Alliant, in this case, had wanted to be explicit that the available balance method would trigger overdraft fees, it should have said so specifically in the provision that an ordinary customer would look to when trying to understand what exposure they might have. I'd like to just make one more point, perhaps, in response to your question, Judge St. Eve, which is that even if you thought unambiguously that this contract could only be read to apply an available balance method of calculating overdraft fees, that does not get Alliant out of the problem here because available balance itself is inherently ambiguous. And this is what the Eleventh Circuit in Thames, I think, made very clear. It is subject to two different types of definitions. The first is a definition which we call the collected available balance, which includes not just settled transactions but also holds placed on deposits. Let me come back to Illinois law again. Has any Illinois court ever held that available balance is always ambiguous? No, Your Honor. Has any Illinois court said anything even bearing on your claims? Not that I'm aware, Your Honor. Isn't that a problem? I don't think so. Again, the question is why is this case in federal court when it rests on state law? We're supposed to be implementing state law to the best of our ability, but there aren't any state cases. You're making novel arguments about state law. Maybe they're right. Maybe they're wrong. But one might think we're the wrong people to be the expositors. My response to that, Your Honor, is I think this court and federal courts in general are perfectly capable of applying basic black-letter rules of contract, which, as Judge St. Eve just suggested, the first is read the contract as a whole. Another is a basic question of how you decide whether a particular phrase or contract is ambiguous. Of course, that's why you lost. The district judge said you're not reading the contract as a whole. I am. Reading the contract as a whole, you lose. Now, I can understand a response that says something like the Illinois judiciary doesn't work that way. It looks to see whether a phrase like account balance is ambiguous on its own without reading the rest to put it in context. That would be a big boost for you, but I gather there's just nothing there. I don't think it matters, Your Honor. No. It doesn't matter what the state courts say about this issue. I think the question is decided by the basic doctrinal contract law analysis, which is, is the contract susceptible to multiple competing plausible interpretations? And for a lie to win, it must convince you that – I don't understand that either. Suppose it's subject to competing interpretations. The right interpretation is going to be picked by a judge unless you contend that there is parole evidence that needs to be considered. But I didn't see any contention that parole evidence had to be considered. So our position, Your Honor, is that in the face of competing plausible interpretations, which I think at a minimum exist here, it was premature for the federal judge to dismiss the case at the pleadings. You're correct that down the road, the judge may reach a conclusion. No, no, no. Look, I want to know what lies down the road. Are you contending that there is parole evidence that would disambiguate the words of this contract? We think there are two – not parole evidence, but – Okay. Then the answer is no. Are you contending that there are usages of trade that would disambiguate this contract? Yes. And we cited those in our brief, and they were cited below, that banks have long used this phrase, and when they've wanted to apply it, have defined it in specific ways. There is also – I don't think you understand what a usage of trade is. Well, that may be, but you asked the question, which is what happens down the road. We think there are several steps that would apply, but to dismiss a breach of contract claim at the pleading stage in the face of an ambiguous set of terms is premature under both federal and state law. Only federal law determines this. Choice between judge and jury and all procedural matters in federal litigation are resolved exclusively by federal law. That's just a rule. Yes, I agree. If I could make one further point before I sit down, which is that banks have long understood how to be clear about this to consumers. They understand that when they are applying an available balance method, calculating when overdraft fees are assessed, that they must include that term in the contract, and they must specifically define it or provide examples of how it works, because no ordinary consumer does, in fact, understand it. What's your basis? What's your support for saying banks have long understood that? That's a pretty broad statement. It's been in place in bank contracts for years. No, no. You make a statement, banks have long understood X. The proposition that something is in a few contracts doesn't establish that banks have long understood X.  I'm happy to revise that statement and just explain to you that banks do use this term in a clear and well-defined way. That is in the record. It's been identified at pages 30 and 31 of our brief. And what they do is they specifically define that term to avoid leading a consumer to think that a different version of calculating overdraft fees would apply to them, even in the face of language that might be considered ambiguous. I would like to reserve the rest of my time for rebuttal. Certainly, Mr. Wessler. Mr. Richter. Good morning, Your Honor. May it please the Court, Stuart Richter on behalf of the appellee. Your Honor, this is a breach of contract case. There's no federal question anymore. I think you can tell where we would like you to start. Pardon me, sir? I think you can tell where we would like you to start. Would you like me to start with jurisdiction, Your Honor? It's not technically jurisdiction. 1334d.4 says a court shall decline to exercise jurisdiction. We've said that's an abstention doctrine. But still, there is a mandatory word in that statute, and we need to deal with it. It is the mandatory home state exemption from CAFA. I'm very well familiar with that. If you would use real English words, that would help. Yes, sir. Alliant is a national credit union. It is basically an online credit union. I cannot answer for the Court today whether more than two-thirds of the members or the class members in this case are not citizens of the state of Illinois. It used to be the United Airlines Credit Union, and that's the base. So I can't answer your question, Your Honor. When this case was filed, there was a federal claim. There was a 1331 jurisdiction, and the CAFA jurisdiction, we're alleged. I've already asked you to use real English words, and I assure you that CAFA is not an English word. Class Action Fairness Act. It really helps. We're a bunch of generalists. It really helps to use English when talking to a federal court. Now, the question I have for Mr. Wessler and have for you too, which I hope you'll address in the supplemental briefs, is given the fact that this case relies on Illinois law, doesn't that necessarily imply that more than two-thirds of the class members have to be from Illinois? Or is it your view that Illinois law determines how the credit union deals with people who live in Nevada? The latter, Your Honor. No. It is our position Illinois law applies to people from members of the credit union and class members who reside in Illinois. You are correct, Your Honor. Illinois law would only apply to certain of the class members. Will you be able to tell based or will you need discovery to determine if two-thirds or more are in the Illinois class? Is that something you'll be able to figure out without some kind of discovery? That is a question that I've addressed in many of these cases, Your Honor, and it's a difficult question to answer because you have to decide where a class member resides. Not all members of this credit union are class members. I can tell you based on the credit union's records how many of the overall members are residents of a particular state. Residence is, of course, not the word in the statute. Citizenship. Citizenship. And if you talk about residents, there will be another supplemental briefing order. Right. Is there a choice of law clause in the contract? I don't believe there is. All right. Please proceed. Sorry, Your Honor, I didn't file this case. I don't care who files a case. I understand. It's the responsibility of all lawyers at all times to be cognizant of issues about whether the case is properly in federal court. The fact that somebody else filed it does not relieve you of your responsibilities. The case was properly in federal court when it was filed. In any event, Your Honor. So how will you determine the citizenship of the class members? We will first have to decide who's in the potential class, Your Honor. If it gets past this phase, we'll have to decide who's in the class. I think the problem is to proceed at this stage. You'll have to determine if more than two-thirds of the class members are citizens of Illinois, which to me rings discovery bells, that that may not be something you can do without a bit of discovery. So we can address that in supplemental briefing and whether or not discovery is needed to make that determination. You're right, Your Honor. We'll address it in supplemental briefing. I will say this for now, that to determine who's in the class, you can determine who got the alleged improper fees, and then you can look at that person and see where they currently reside. That doesn't give you citizenship. Residence is not the question. Residence. Was a class certified in this case? No. Well, that's problematic on its own because classes should be certified or not before cases are decided on the merits. We'll say that clearly enough. Under the statute, therefore, it depends on what class was pleaded, and we're going to have to go back to the pleadings to figure out what's been pleaded as the class. This may not be at all easy. Well, the only class that's left that was pleaded. No, no. It's not what's left. It's what class was pleaded because what's left might matter had there been a class certified. But if we have to go on the pleadings, then we ask what class is pleaded. Now, we've left it open in this circuit whether the extension doctrine in D4 applies at the time the case was decided or at the time the case is filed. That's an open question in the Seventh Circuit, and it may be necessary for the parties to address that question, too, if those things seem to be different. Understood, Your Honor. Thank you. All right, I'll start you out on a whole other road. Okay. Setting aside whether the agreement speaks in terms of available rather than account balances, where in the agreement is the term available funds or available balance defined? And why should we assume that a customer will understand that it is a term of art? To answer your first question, Your Honor, available balance and available funds is not defined in the contract. To answer your second question, the usage of those terms in the contract when taken as a whole make it clear, and the appellant concedes this, that if there's not available funds in your account, the credit union is entitled to decline or not permit a payment. That's undisputed. The question here in the breach of contract claim, according to the appellant, is you can decline a transaction if you don't have sufficient available funds. It says that, but you can't charge a fee unless there's not enough ledger balance or full account balance. So that's what the appellant is reading into the contract. And if I may, counsel pointed to some terms and conditions. If I could briefly walk through a few provisions in the contract, I recognize you all have read it. I'm not going to read the language of the contract, but I would like to walk the Court through a few provisions because I think in the hundreds of pages of briefing in the joint appendix, some things might have been overlooked. Section 7A sets the stage. If you don't have sufficient available funds, the credit union is entitled to reject a transaction. That's admitted. It goes on to say there, if you don't have sufficient available funds or you don't have an established overdraft protection plan. One of the arguments the appellant makes is that there's no linkage between 7A, where the appellant concedes we can reject a transaction, and the penultimate sentence in Section 8B, which says quite clearly, it doesn't mention sufficient account, account balance or anything, it just says if a transaction is presented to us and we reject it, you are going to get a fee. That, from the contract perspective, should be the end of the analysis. Well, you know, forgive me, but, you know, you rely on Section 8B to define the term in 8A, right? In 7A, I'm sorry, yes, Your Honor. Why would a customer who hadn't opted into the overdraft protection plan even look at that section, which is limited by its title and its first sentence to those who had enrolled in the plan? Two responses to that, Your Honor. First, as Judge St. Eve pointed out, we have to look at the contract as a whole when interpreting it. And second, as I just pointed out, in Section 7A, it does refer to overdraft protection. So the way the contract works is it starts in 7A, sets the stage of when the credit union will or will not pay a transaction, and it walks you through the overdraft procedures and then overdraft protection and courtesy pay. So the contract has to be read. Those sections have to be read together. And that's what the district... I mean, if you wanted to define the terms account balance or available balance in a particular way, it seems to me there should have been a definition section because, you know, a customer shouldn't have to be placed in the position of having to read every other section, consider the use of the words in those other sections. I mean, you know, the reasonable consumer shouldn't have to do that, it seems, doesn't it? Certainly, Your Honor. The contract could have been drafted better. Any contract could be drafted better. You put anything in front of me. Terms could have been defined. But I would respectfully submit that's not the question today. The question today is, is this contract as drafted, can it be interpreted to mean that a liant can't charge a fee when it rejects a transaction unless there's sufficient ledger balance? Yes, and to address a point that Mr. Wessler raised, is that the appellant has cited a number of contracts from other credit unions and banks that use the definition in those terms. These cases started being filed in about 2017. This case was filed in 2019. I was involved in drafting a lot of those revisions and they didn't come around until after these lawsuits started being filed. It's a result of these lawsuits that most of those changes were made. And in fact, the contract in this case, and the appellants put it in the record, was changed as a result of the lawsuit in this case. It doesn't mean the old contract was ambiguous. It's just as a result of lawsuits that you try to make it better. If I may, I'll turn the Court's attention. I've been addressing the sufficient funds claim. That's where a transaction is prevented for payment. There's enough ledger balance, not enough available balance. And I think Section 7A, read with 8B, disposes of that claim. There is another theory that's articulated. Again, the appellant is not challenging the credit union's right to charge fees. And they can't argue the point, Your Honor, that you just made, that the disclosures should have been clearer. Those claims are all preempted by federal law. Retry fees, that's the situation where, in this case, Ms. Page allows a merchant to access her checking account to pay a transaction. The merchant tries. There's not enough money. The transaction is rejected or not permitted. And a fee is charged. The appellant admits, again, that if a transaction is presented, there's not enough money in the account, in the available balance, you can reject it, credit union. They dispute whether you can charge a fee, but for purposes of the retry theory, they don't have a problem with the credit union charging a fee the first time. They also concede that the merchant is allowed to represent that transaction. The appellant, in this case, preauthorized the merchant to try again. And they concede the merchant can try again. They concede that if the merchant tries again and there's not enough money in the account, the transaction can be rejected. What they say is, under the terms of the contract, you can't charge a fee the second time. And the logic there is that because the member only authorized the merchant to be paid once, that each time the merchant tries, it's the same item. They say it's per item. Well, this contract doesn't say per item. The contracts that they've cited to this court in other cases say per item. This one doesn't. And Section 8B clearly says that each time a transaction is presented to us, to the credit union, and we reject it, you're going to get a fee. And the fee schedule says each time an NSF item, you will get a fee. I think that disposes of that claim under the contract theory. Thank you. Thank you, Mr. Richter. Anything further, Mr. Wessler? Yes, Your Honor, just a few brief points in rebuttal. I just want to pick up on a question Judge Rovner, you asked, which is whether there's any definition for available balance in this contract. You heard my colleague on the other side say no. And then attempt to defend their argument by pointing to the way that certain other sections use a different phrase, sufficient available funds. The problem, even if you accept all of that, though, is that nowhere in this contract is there any explanation, not just definition, but explanation, that the use of the phrase available funds or insufficient or sufficient available funds encompasses not just holds placed on deposits, but also unsettled pending debit transactions. And that's the key distinction that the 11th Circuit understood in Tim's. It said, look, available balance just standing on its own doesn't tell you which version of calculating the bank is using. Because ordinary consumers are not familiar with the ins and outs of the banking industry, unless you clearly either define it or provide illustrations or examples of how it works, no reasonable ordinary consumer would understand that. And there isn't anything in this contract, not in 7A, not in 8A, 8B, or the funds availability policy, that supplies that crucial second explanation that the bank is not just applying an available balance method of calculation, but a specific available balance method that incorporates both holds on pending debits. And I'll just add finally on the question of the multiple retry fees. The main argument you just heard from my colleague was it doesn't say per item, but it does say each item. And whether it says per item or each item, the result is the same. And it's that the bank is limited to assessing only one overdraft fee per item. And that's what an ordinary consumer would understand to be an account holder's order to pay. I see my time has expired, unless the court has further questions. Thank you, Mr. Wessler. The case is taken under advisement.